The Chancellor.
In this case, the plaintiff, Boyd, claimed title to the military lot by a deed from B. Wallace, of the 16th of September, 1799, and the Onondaga commissioners awarded the title to Wallace, on the 29th of August, 1798, and he claimed under a deed from Bevins, the soldier, of 2d of March, 1796. Rut Bevins, under whom both parties claimed title, had already conveyed the premises to Henry Hart, on the 9th of March, 1784, and Hart died in June, 1787 ; Herman V. Hart, his son and only heir at law, was born the 7th of September 1784, and he filed his dissent to the award of the Onondaga commissioners on the 7th of March, 1808.
The lot was vacant and unsettled, until the defendant, Lewis, entered into possession under Hart, in 1812.
Hart’s deed was deposited according to law on the 25th of April, 1795, and duly registered ; Wallace’s deed was also duly recorded in April, 1796.
*There is no doubt from these facts, which appear in the special verdict, that the title of Lewis, the defendant, and possessor of the premises under Hart, is the elder and better title.
The only point in the case raised for our consideration, is, whether Hart was not barred of his title by the award of the Onondaga commissioners, because he did not file his dissent to that award until two years and six months after he was of age. It seems to be admitted, that if he had filed his dissent within two years after he was of age, his title would have been secured. The only question is, whether he had two or three years to file his dissent.
*374 act creating the Onondaga- commis The 3d section of the sioners, (sess. 20. ch. 51.) declared that their awards should be binding after two years, unless the party aggrieved, within that time, filed his dissent, and if not in possession of the land, within three years, brought his suit. The 7th section provided, that if the party dissenting was in possession, then the other party in whose favor the award was made, was to bring his suit within three years. The dissent under these two sections was to be made in two years, and the suit to be brought within three years. The act, therefore, was a new and narrow statute of limitations as applied to the military lands ; and the journals of the two houses of the legislature will show, that the bill met with strong opposition by reason of the very short period of limitation given in those two sections, for filing the dissent and bringing the suit. But the case now before us arises upon the limitation in the 8th section, which is in these words—“ neither this act nor any thing therein contained, shall extend or be construed to the prejudice of any person, under the age of twenty-one years, or feme covert, or person not of sound mind or in prison, if such infant, feme covert, &c. shall, within three years after coming to the age of twenty-one years, &fC., malee their dissent, and bring their suit, and prosecute the same to effect as aforesaid
Hart complied literally with this proviso. He did, within three years after coming to the age of twenty-one years, make his dissent, and are we at liberty to depart from the plain and express words of the act, and say that Hart ought within two years after coming to the age of twenty-one #years, to have made his dissent? Surely if' that was the intention of the legislature, they have used words so directly contrary to that intention, as to render this section a snare to the unwary. If such had been the intention, the legislature could not well have avoided saying, in easy and natural language, that the infant and others must make their dissent and bring their suits, within the times aforesaid, after their disabilities were removed. In the general statute of limitation for common cases, the words are, that infants, feme coverts, &c. shall bring their actions “ within the respective times above limited after such disability removed.” But in this case and in this statute, the legislature have departed from the usual language of such a proviso, and adopted words which expressly declare a different period of limitation. They cannot be mistaken. They are so plain, that he that runs may read them ; and I may safely say, that no person would ever have suspected, from the first perusal of these words, 4eclaring that the infant, within three years after coming to the age of twenty-one years, should make his dissent and bring his suit—that it was intended he must make his dissent within two years. We are not justified in rejecting this clear and intelligible language, and in seeking for some hidden and dangerous meaning, because the section concludes *375 with the words as aforesaid. Let us rather apply to this case the excellent sense and the unsophisticated simplicity of Valid, in the rules which he gives for the interpretation of treaties : £* It is not permitted,” he says, (B. 2. c. 17. s. 263.) “ to interpret what has no need hi interpretation. When an act is conceived in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason to refuse the sense which naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it, is to endeavor to elude it. IF this dangerous method be once admitted, there will be no act which it will not render useless.”
The only plausible reason which the counsel assigned for departing from the obvious sense of the section, and the downright plain language which it uses, is, that in the other sections the party, who was under no disability at the time of the award, was to file his dissent within two years. But *jf the legislature thought proper to allow the period of one year more to those persons who had just started from infancy to manhood, or from lunacy to a sound mind, than to other persons, who has any just cause to complain, or to question the wisdom or the goodness of the law ? There may be very sound reasons assigned for the difference of limitation in the two cases. The time was very short, at best, and was a most serious and unprecedented abridgment of the usual time allowed for asserting title to land. If the construction of the section wars even doubtful, we ought to incline to the most benign and favorable interpretation in favor of the better title. It is not to be supposed that infants on their first corning of age, or persons of diseased understanding on their first regaining their right minds, or feme coverts on their first entrance upon the cares and duties of bereaved widowhood, can bestow a very prompt attention to their civil rights. The mind in such cases enters with diffidence «pon a new and untried scene, and I should think that one year was no more than a reasonable indulgence of time to enable them to acquire those habits of vigilance and resolution which can put them upon a level with the experienced men of the world, and enable them to encounter, on equal terms, with skilful veterans in the animated competitions for property. The legislature of 1797 acted, therefore, in my humble opinion, with great, good sense, and with an enlightened humanity, when they allowed to this class of persons the term of three years, to look into the disordered state of their military titles, to unravel the intricate webs of fraud which had obscured them, to satisfy themselves of the justice and equity of their claims, and, then, on the final result, to enter their dissent, and commence their suits.
The reason of the law, and the words of the law, appear to ine to be equally plain in favor of the construction given to it by the Supreme Court, and I am, accordingly, of opinion, that the judgment ought to be affirmed.
*376 March 20th.
This being the unanimous opinion of the court, it was thereupon oRdered and adjudged, that the judgment of the Supreme Court, in this cause, be affirmed ; and that the #plaintiff in error pay to the defendant in error, for his costs and charges, in and about his defence in this court; and it is further ordered, that the record be remitted, &c.
Judgment of affirmance.