CIRCUIT COURT FOR WASHINGTON COUNTY, OCTOBER TERM, 1871.

## DARLING SMITH *v.* LYDIA SMITH.

COUNTER AFFIDAVITS.—On a motion to open a decree under sec. 57 of the code, counter affidavits may be filed.

CONSTRUCTION.—Where a literal construction of the words of an act leads to an absurdity, resort will be had to the ordinary means of interpretation, and the court will look to the occasion and necessity of the law, the defects in the former law, and the designed remedy.

IDEM.—The times of holding the circuit courts in the third, fourth and fifth districts, are not changed by the act of 1870.

SERVICE BY PUBLICATION.—MOTION TO OPEN A DECREE.—The circumstances that an affidavit to obtain an order of publication of summons, was made upon information only, and that it did not show what effort had been made to learn the defendant's residence, may be considered on a motion, for leave to answer after default and decree.

DIVORCE.—HUSBAND TO ADVANCE MONEY.—Where a decree of divorce, obtained without personal service of summons was opened, and the wife allowed to defend, and there were circumstances tending to show that the plaintiff had induced or permitted his wife to go to another state that he might obtain a divorce in her absence without her knowledge; it was directed that an order be entered requiring the plaintiff to provide for the expenses of her return; but it was required that the order should contain provisions guarding against diverting the money to any other purpose.

THIS is an application to open a decree of divorce, and to allow the defendant to answer, made under section 57 of the code. This section provides that a defendant, against whom publication is ordered, may for cause be allowed to defend

at any time before judgment, and may, "upon good cause shown, and upon such terms as may be proper, be allowed to defend after judgment, and within one year after the entry of such judgment, on such terms as may be just."

The defendant filed, with her motion, the affidavit of her attorney; and the plaintiff filed counter affidavits. The defendant moved to strike out the counter affidavits.

The motion to strike out was overruled, and the court permitted the counter affidavits to be read.

The plaintiff's attorneys also presented this objection to this proceeding, that the amendment, found on page 4, of the acts of 1870, repeals the act of 1868, providing the times for holding the supreme and circuit courts, and does not provide any time for the holding of this court; and that no term can now be legally held except terms fixed by order of the court or of a judge thereof. This objection and the motion to open the decree, were both submitted at the same time.

*W. D. Hare* and *O. Humason,* for the plaintiff.

*Ball & Durham* and *B. Killin,* for the defendant.

By the Court, Upton, J. An act was approved on the, twenty-sixth day of October, 1868, which provides "the times and places for holding the supreme, circuit and county courts." Section 2 of that act provides the times and places for holding the circuit courts in *all* the districts of the state.

The legislature of 1870 passed an act entitled "an act to amend an act entitled 'an act to provide for the times of holding the supreme, circuit and county courts,'" approved October 28, 1868, which purports to enact "that section 2 of said act be amended so as to read as follows:" and proceeds to set out so much of said section 2 as relates to the first and second districts, making no change in regard to those districts, except to designate the *third* Monday in October instead of the *first* Monday, as one of the times of holding the circuit court in Coos county. This amendatory act makes no mention of the *third, fourth or fifth districts.*

It is claimed that this amendatory section stands now as a substitute for the whole of section 2, of the act of 1868, and that there is now no time fixed by law for holding the circuit courts in the third, fourth or fifth district. There was evidently an inadvertency in drafting the act of 1870, and I am aware that there has been serious apprehension that the matter here presented has resulted in repealing the law fixing the times for holding the circuit courts in this and two other districts. But I trust this apprehension is unfounded. In construing a statute, the purpose is to ascertain what was the intention of the legislature; and a proper application of acknowledged rules of construction will, I trust, dispel all doubts on this subject. It is assumed that this is a case where the words of the statute are clear and precise, and, consequently, admit of no interpretation, and are within the rule laid down in *Jackson* v. *Lewis* (17 John. 475).

But in order to be within the rule there laid down, the language must not only be clear and precise, but the sense must be manifest, *and it must lead to nothing absurd.* "The maxim, *falsa demonstratio non nocet,* is founded in common sense as well as law, and is not less applicable to statutes than to wills and deeds." (*Watervliet Turnpike Co.* v. *Mc-Kean,* 6 Hill, 616.)

When a literal construction of the words of an act leads to an absurdity, resort will be had to the ordinary means of interpretation, and the court will look to the occasion and necessity of the law, the defects in the former law, and the designed remedy. (*Donaldson* v. *Wood,* 22 Wend. 395.)

Section 3 of the act of 1870, shows that the object of the act was to change the time of holding the court in Coos County; and that change was made for a particular reason which is expressed in the act. It is difficult, if not impossible, to avoid the conclusion that that was the sole object of the amendment.

If the construction contended for is to obtain an appropriate title, would be, "an act to amend the second subdivision of section 2 of," etc., and to repeal the third, fourth and fifth subdivisions thereof. As no intention to repeal is ex-

pressed, it is a question whether such construction will not conflict with sec. 20 of art. 4 of the constitution.

But if, from all other considerations, this act would be technically a repeal, the difficulty may be avoided by calling up another technicality. The act of 1870 purports to amend an act approved the twenty-eighth of the month. The act providing for holding this term, was approved on the twenty-sixth of October, 1868. One who relies on a technical point, must be fortified against similar objections. I am very confident there is no valid objection to holding the regular term of this court at the present time; and I shall proceed to consider the case presented by the motion.

It is shown by the affidavits, and other proofs on file in the cause, that the plaintiff, being a resident of this state, went to Massachusetts, where the defendant had resided up to that time, and the parties were married at Lowell, in that state, and came to this county, where they lived together until December 20, 1870, at which time the defendant returned to the eastern states with her husband's consent. She claims that she went there for the purpose of visiting her friends, that she intended to return here in a few months, and that her husband promised to send her money for the expenses of her return to this state; and that he failed to send it. The complaint in the cause is based on a charge of adultery, alleged to have been committed while the parties were residing together in this county, and a decree of divorce was rendered in favor of the plaintiff in July last.

The defendant is still in Massachusetts, and claims that she is innocent of the crime charged, that she had no knowledge of this suit, and no reason to apprehend a suit until after the decree was rendered. That she has never received any copy of the summons or complaint, that the plaintiff knew her postoffice address, and that the decree was obtained by artifice and deception. She asks leave to defend; and that the plaintiff be required to furnish means to enable her to meet the expenses of the defense. The plaintiff has sufficient property to meet all necessary expenses of this suit.

The order of publication of summons did not require a copy to be deposited in the postoffice.

The plaintiff claims that the defendant left this state with an intention permanently to separate from him, and with an intention never to return, and that all his proceedings in the action have been in good faith and regular.

This application to open the decree presents a question that is delicate, and yet of such importance as to demand a thorough examination. There are special reasons for great caution in passing upon this kind of an application in a suit for divorce. The enormity of the wrong, if the divorce is obtained by deception, is the greatest of these reasons, but there are others that are of more than ordinary consequence to individuals and to the public. The law gives one year in which to make such an application, and yet the period is only six months, during which the letter of the statute restrains the parties from marrying, and it is evident that the most serious consequences may result from an erroneous decision of a question of this kind.

The present controversy is complicated by uncertainty in regard to the facts. If I was satisfied, either, that the defendant returned to the Atlantic States, intending a permanent separation, or that she received a copy of the process in time to enable her to answer before the default, I should overrule the application.

One of the reasons for holding the case under advisement, after the close of the last term, was an uncertainty in my mind, as to the question whether the defendant had actual knowledge of the pendency of the suit, and a desire to extend the time in which an application similar to this might be made before decree.

The propriety of that course was commended by the circumstances that the affidavit for service by publication was not made by the plaintiff, and the suggestion was of the greater force, in view of the wrong that would be done, if an abuse of the process of the court should be designatedly a means of circumvention, to procure a decree of divorce without notice to an absent party.

We have no means at the present time, of knowing the whole truth in regard to the statements made in support of the

motion. An affidavit made by the defendant herself, has been ruled out, for want of formality in the official certificate attached to it; hence we have not even the defendant's sworn statement in regard to the truth of her allegations. These controverted facts of so serious character are of great public, as well as private, interest; and proof cannot even be presented in regard to them, unless, at least, further time be granted. The first question to be determined, is whether the defendant shall be allowed any further hearing, either on her allegations of fraud and want of notice, or on the merits of the original cause.

If it is true that the plaintiff permitted the defendant to go away with a belief that his affection for her was undiminished, and with the expectation on her part of returning, to spend with him the remainder of their lives, and yet purposed obtaining a decree without her knowledge, the proceeding is such an outrage upon her, upon the court, and upon the public, as to render an investigation an imperative duty.

If, on the contrary, this application is an afterthought, and, as is claimed by the plaintiff, is a mere attempt to extort money, the investigation can do but comparatively little harm.

The affidavit of the defendant's attorney, upon information and belief, which standing alone would scarcely challenge serious consideration, serves as a thread upon which to connect and arrange the facts and circumstances otherwise shown in regard to the time when the parties ceased living together, the manner of their separation, the circumstances of the defendant's departure, the provision made for her, and the commencement of this suit so recently after such separation. These several matters, if not worthy to be called a chain of circumstancial evidence, tend to throw a suspicion over the transaction, that it is very desirable should be removed. And the reasons thus presented in favor of a reëxamination of this cause, are greatly strengthened by what appears in relation to the order for service by publication. The affidavit for the order is not made by the plaintiff, but is made by his attorney; and upon the

important subject of the defendant's residence and post-office address, it states only, that the defendant does not reside in this state, and " defendent's residence is unknown, and cannot with reasonable inquiry be ascertained."

On the trial the plaintiff testified that when the defendant left this state it was to go to Lowell, Mass., or Bedford, Maine, and there is very strong reasons to believe the postoffice address of the defendant could have been ascertained by such reasonable inquiry as that of writing or telegraphing to those towns.

But the circumstance that such inquiry does not appear to have been made, and the fact that the affidavit was not made by one having the best means of knowledge, I think may well be considered on this motion. In saying this, I do not design to express any opinion on the question whether the affidavit contained sufficient *prima facie* to warrant the order of publication; but assuming that the order and the service are in conformity with the statute, it seems to me proper to consider whatever may be peculiar in the mode of commencing and prosecuting the suit, if such peculiarity tends to throw light upon the question under consideration. To this end it is proper to notice the situation of the parties and the manner of obtaining service, together with the fact, which I think must be taken as true, that the defendant did not hear of the case in time to answer.

Upon these considerations, I think it my duty to open the decree, and permit the defendant to answer.

It will also be ordered that the plaintiff deposit with the clerk $250, to enable the defendant to meet the expenses she may incur in the suit; and if the defendant desires to return to this state to make her defense in person, proper steps can be taken to bring about that result; but the plaintiff will not be required to advance any money for that purpose upon any uncertainty as to the use that will be made of it. The defendant's attorney will prepare the form of an order in regard to meeting the expenses.