## YOUNGHAUSE *vs.* FINGAR.

The plaintiff, in a case originating in a justice's court, recovered a judgment for $95 damages. The defendant appealed to the county court, specifying in his notice of appeal, among other grounds of error, that "the judgment should have been more favorable to him in this particular, to wit, that said judgment should not have been for more than $25 damages, besides costs." The plaintiff served no offer to modify the judgment. The plaintiff recovered but $49, in the county court, and that court allowed him costs; and the Supreme Court, on appeal, affirmed the judgment of the county court. *Held*, on a re-argument, that the judgment of the county court, so far as it adjudged costs to the plaintiff, was erroneous.

*Held, also*, that the notice of appeal was a sufficient compliance with the amendment to section 371 of the Code, made in 1866, which provides that if the appellant "claims that the amount of judgment is less favorable to him than it should have been, he shall state what should have been its amount." Yet it seems that in bringing this class of appeals, greater caution should be observed, by following more closely the language of the statute, instead of adopting the form of notice in this case as a *good* precedent.

Liberality, in the construction of that statute, should always be indulged; especially in a justice's court proceeding. The notice is sufficient if it gives the respondent notice of the *particular* complained of, in the amount of the judgment. It is then for the respondent to correct it.

THIS is a motion on a re-argument of a case originating in a justice's court, where the plaintiff recovered $95 damages, and the defendant appealed to the county court therefrom. In the county court the plaintiff recovered but $49 damages, and the question was, and is, which party was entitled to costs. The defendant, in his notice of appeal, stated the following grounds, among others, as error : "*The judgment should have been more favorable to him in this particular, to wit, that said judgment should not have been for more than $25 damages, besides costs.*" The plaintiff served no offer to modify the judgment. The county court allowed costs to the plaintiff. An appeal was taken to the Supreme Court, where that judgment was affirmed. The defendant obtained leave to take the case to the Court of Appeals. The Court of Appeals dismissed the case, on the ground that it was not appealable ; but all the members

of that court concurred in an opinion that the question of costs was erroneously decided, in the court below. The case now being again in the Supreme Court, the defendant asked for a re-argument, in order to move for such a judgment for costs as ought to have been rendered, in the case, upon the law as now expounded by the Court of Appeals.

*R. E. Andrews,* for the plaintiff.

*Beale & Bouton,* for the defendant.

*By the Court,* P. POTTER, J. This case comes before us upon a re-argument, a motion for that purpose having been heretofore granted. The case has been to the Court of Appeals. That court having expressed their views of the law of the case, it necessarily carries with it, to us, the adoption of their opinion in our decision now, upon the merits.

Taking the *obiter* opinion of the Court of Appeals as the true interpretation of the statute, the granting a re-argument seems to be in furtherance of justice; for the decisions below, according to that opinion, must be erroneous. It is now in our power to correct that error, and we should regard it to be our highest duty to render justice according to law. The consent of this court, that the case should be taken to the Court of Appeals, was in the hope of obtaining from that court an adjudication of that vexed question which has, for years, greatly perplexed the bar, and suitors; and the more so, by the fact that coördinate branches of the Supreme Court had arrived at directly contrary conclusions, and their conflicting views had been adjudicated, and their opinions expressed, and reported in the books; and yet with no apparent power of getting a review in the court of last resort; for the reason that the cases were supposed to be unappealable.

Younghause *v.* Fingar.

Upon the construction of no modern statute in relation to a question of practice, has there been more conflict of opinion in the courts than that in regard to the effect of notices of appeal made in certain forms, from justices' courts, under section 371 of the Code. Especially was this so, before the amendment of this section, in 1866. It was a matter of sincere regret to the profession, and to the courts below, that this question could not have its settlement in the court of ultimate resort. And inasmuch as the decisions and judgments below were generally regarded as not appealable, it still remained a vexed as well as a doubtful question to the parties, to the bar, and to the courts; increasing in complexity as reported cases were multiplied, and by the different views of interpretation by courts of coördinate authority, in different judicial districts and departments. Not only judges in different districts, but judges in the same districts, with equal integrity of purpose, and with equal power of reasoning, were found forming antagonistic views of interpretation of the same statute; and judges having *antagonistic* views of the rules of construction were found uniting in the same result, and judges with *united* views of construction were found, also, coming to antagonistic results. Such a condition of incertitude and perplexity surely demanded relief; and this relief it was the object of this court, if possible, to obtain. And it was with this view, and in this hope, that the case before us was allowed, upon an application made for that purpose, to be carried to the Court of Appeals; though not without the apprehension of its being dismissed (as it has been) on the ground that the case was not appealable. We have, nevertheless, accomplished the very greatly desired object, of getting the voluntary (but *obiter*) interpretation of this statute from the highest judicial State authority, though at the expense of a gentle rebuke for sending up the case without a written opinion. We accept the reproof with kindly feeling, and hope to excuse this

omission of an opinion, by the good that has resulted; and by the fact that there were cited, in the briefs before us, and can be found in the books of reports, at least ten opinions, already too many, and too much in conflict; embracing all views of judicial construction, upon the very point decided in this case. We admit that we labored under the belief that another opinion by us, which must be in all its features like some of those already reported, would add nothing, by way of authority, to that high court of review. The uselessness of our sending up to that court an opinion, seems now the more manifest, in the fact that not one of all the various reported decisions contained in the briefs is referred to, in the opinion of the Court of Appeals. Glad as we are to have received this interpretation of the statute in question, it will be our pleasure, as we shall deem it to be our duty, to follow, and to adopt it now in this court, which has jurisdiction of the question. Such an adoption and adjudication will be greatly useful to the profession, in removing the doubts and conflicts of opinion which have heretofore occasioned so much embarrassment, in this most prolific cause of litigation. We may also, at the same time, render a service to the profession by giving a slight review of the reported cases upon this point, to show the conflict between them, and the cause of departure in judicial construction, in that regard.

The statute in question was passed in 1862, and was an amendment to the 371st section of the Code as first adopted. The first reported decision under this section, giving it construction, was *Fox* v. *Nellis*, at special term, in March, 1863, reported in 25 *How. Pr.* 144. The opinion in the Court of Appeals, now given, is in exact accordance with the decision in the case of *Fox* v. *Nellis*. This section of the statute was passed to regulate costs in appeals from justices' courts, and the section then read as follows: " *In the notice of appeal, the appellant shall state in what par-*

Younghause *v.* Fingar.

*ticular or particulars* he claims the judgment should have been more favorable to him. Within fifteen days after the service of the notice of appeal, the *respondent* may serve upon the *appellant* and justice an offer, in writing, to allow the judgment to be corrected *in any of the particulars* mentioned in the notice of appeal. The *appellant may,* thereupon, within five days thereafter, file with the justice a written acceptance of such offer, who shall thereupon make a minute thereof in his docket, and correct the judgment accordingly; and the same, so corrected, shall stand as his judgment, and be enforced accordingly. * * If such offer be not made, and the judgment in the appellate court be more favorable to the appellant than the judgment in the court below; or, if such offer be made and not accepted, and the judgment of the appellate court be more favorable to the appellant than the offer of the respondent, the appellant shall recover costs." In *Fox* v. *Nellis* a judgment had been recovered, before the justice, for $159.50. In the notice of appeal, it was stated that the *particular* in which the appellant claimed the judgment should be more favorable to him was, "that the judgment should not have been for more than $5." It was there held that this was a sufficient statement of the *particular* required by the statute; to wit, as to its *amount*, that it was for too large an amount; that such a statement was sufficient to cast upon the respondent the duty of acting, on his part. He knew, as well as the appellant, whether he had obtained an unjust or an unrighteous judgment; and if so, he was, by this statute, put upon his conscience, and at the peril of future costs if he refused to correct it; and if he refused, he would be justly punishable with costs. But if he made a conscientious correction, *in this particular*, then he threw the hazard of future costs upon the appellant if *he* did not accept the correction. This seemed to be a wise provision of the statute, calculated to check litigation, as well as to avoid

the obtaining of unconscionable judgments. With this interpretation of its meaning, it seemed to be in view of substantial justice between the parties. This view was followed, at general term, in the sixth district, in the case of *Loomis* v. *Higbie*, (29 *How.* 239,) by BALCOM, J., in a well reasoned opinion. The same case also distinguishing between making the *same* judgment more favorable to the appellant, and one in which the notice claimed an *entire reversal*, or a judgment in favor of the appellant. This was followed by *Reed* v. *Moore*, (31 *How. Pr.* 264,) also a general term decision, Parker, Mason and Balcom, JJ.; they holding that the case of *Fox* v. *Nellis* put forth the true interpretation of this statute. Again, in *Wynkoop* v *Halbut*, reported in 43 *Barb.* 266, at general term, Mason, J., delivering the opinion, *Fox* v. *Nellis* was adopted as laying down the true rule. Following this is the case of *Myers* v. *White*, at general term, third district, reported in 37 *How. Pr.* 393, Peckham, Ingalls and Hogeboom, JJ., in which it is said, " *Fox* v. *Nellis* lays down the true construction of the statute."

But there are reported cases in which entirely different views are taken of the statute ; of its meaning and intent. The first of these departures, as claimed, is the case of *Barnard* v. *Pierce*, reported in 28 *How.* 232, decided by the superior court of the city of Buffalo. But an examination of this case shows that it is not really in conflict with what was decided in *Fox* v. *Nellis*, but actually sustains that case. True, the learned judge who delivered the opinion in *Barnard* v. *Pierce* says that the judge who delivered the opinion in *Fox* v. *Nellis* "misconceived the provisions of the statute," in one particular, to wit, "that he made the *respondent*, instead of the *appellant*, the actor." With great respect for the learned judge, he was mistaken in his facts. It will be seen by a closer reading of the opinion in *Fox* v. *Nellis*, that no such proposition is to be

Younghause *v.* Fingar.

found therein; but on the contrary, it holds that each party in turn is called upon to act.

The next case in order of date, which is claimed to be adverse to *Fox* v. *Nellis*, is *Forsyth* v. *Ferguson*, (27 *How. Pr.* 67.) It is equally a mistake to place this case in conflict. Indeed the same question does not arise there at all. The notice of appeal, in that case, was as follows: " 1st. The justice adopted an improper rule of damages; 2d. The damages should be merely nominal, under the evidence, *if the plaintiff is entitled to any damages;* 3d. The judgment should have been *in favor of the defendant,* and against the plaintiff." Neither of these causes specified any *particular* in which the judgment should be more favorable to the appellant. The first objection did not state what rule of damages the justice adopted, so that it could be seen whether it was or was not unfavorable. The second objection did not even stop at saying the judgment ought to be merely nominal, but that the plaintiff was not entitled to any judgment, and was in alternative terms; not fixing either. And the third objection was, not that the *judgment* should be more *favorable* to the appellant, but asked judgment entirely for himself. Besides, the objection was hypothetical. This was no compliance with the provisions of the statute; and the case was correctly decided. I concur in the correctness of the decision in that case. But in deciding it correctly, certain *obiter* remarks, contained in the opinion of that learned judge, have been adopted, in other cases, as an adjudication; and upon these began the departures to another and different construction of this statute, which followed. Those remarks are as follows: "*To conform to this section of the statute, it should be claimed, unqualifiedly, that the judgment should be reduced to some certain amount, or, in some other respects, specified in the notice, as the case may require.*" I have italicised this language because it seems to have been the basis of other decisions, not only, but probably the

cause of legislative action, in 1866, to make this statute in fact what this language would seem to hold to be its construction and *intent ;* though no such language was *then* in the statute itself. This language was not necessary to the decision of that case; and with due deference, and with the very great respect which I entertain for that learned judge, and the court whose language he is supposed to have spoken, this *obiter* expression does not meet my view as coming within any *rule of construction,* as it certainly is not found in the *letter* of the statute referred to. It cannot be alleged that there is any obscurity, ambiguity or defect of expression in this statute, which required this *obiter* remark. And a decision according to the strict letter of the statute, in such a case, leads to no false consequences, or to injustice. I understand the rule to be, in the construction of a statute, that when an act is conceived and expressed in clear and precise terms, which lead to nothing absurd, there is no reason not to adopt the sense which its plain language presents. To depart from its language, and go in search of conjectures, to restrain, enlarge or extinguish it, is to elude it. (*Vattel, B.* 2, *ch.* 17, § 263. *Jackson* v. *Lewis,* 17 *John.* 475. *The People* v. *New York Central R. R.,* 13 *N. Y.* 78.) The statute in question is a remedial statute ; its object is to give the aggrieved party relief from injustice ; and it is the duty of courts, under such a statute, so to construe it as to advance the remedy in every way that it can consistently be done. And is more strictly so, in proceedings in justices' courts. I think it was intended to impose upon the appellant no obstacle, and to require of him but a simple compliance with its plain and unambiguous language, to entitle him to its benefits.

Following this *obiter* dictum in *Forsyth* v. *Ferguson,* comes the case of *Wallace* v. *Patterson,* reported in 29 *How. Pr. Rep.* 176, decided in the fourth judicial district ; which case was correctly decided, upon the merits, but not ac-

Younghause *v.* Fingar.

cording to the reported opinion, which discusses a question that was not in the case. The notice of appeal did not state any *particular* wherein the judgment should be made more favorable; but claimed that the judgment should be *reversed entirely.* This case did not come under the 371st section of the Code; and it required no construction whatever of that section; but it was an appeal under section 353, and was decided upon that view. Notwithstanding this, the opinion delivered in the case, as written, proceeds *obiter* to give construction to section 371, following and adopting the *obiter dictum* in *Forsyth* v. *Ferguson,* and adopting that as the true construction of the statute, and overruling *Fox* v. *Nellis,* and *Loomis* v. *Higbie,* with these *obiter dicta.* But although this opinion was published, and has since been quoted as authority, it so happens that all that part of the opinion which discusses the construction of section 371 was never adopted by the court as its opinion, nor its publication authorized by its author; but, like too many of the reported opinions in Practice Reports, was somehow obtained and published as written, by some other person; perhaps the counsel in the case. As thus published, it seemed to have overruled *Fox* v. *Nellis,* and *Loomis* v. *Higbie.*

*Smith* v. *Hinds,* reported in 30 *How. Pr.* 187, is also claimed to be adverse to *Fox* v. *Nellis,* on the ground that the court, in their opinion, cite *Forsyth* v. *Ferguson* with approbation; but even *Smith* v. *Hinds* was decided not upon that ground, but on the ground of the omission of the appellant to serve his notice of appeal on the justice. There is one peculiarity in this case, to wit, the recovery before the justice was $48. In the notice of appeal, the appellant claimed that the judgment should have been more favorable to him in that it should have been for only $45, and then again that it should have been only $40, and so continued dropping $5 in each succeeding claim, until the last was for $30. On the new trial the plaintiff

recovered $37. The respondent made no acceptance of any of the offers. It was held that upon this ground the appellant was entitled to costs; and it was also held that having *several particulars*, each reducing the former, did not invalidate the notice. There is nothing said in this case that is in conflict with *Fox* v. *Nellis*, and it cannot be so counted· in the number. Upon the true ground, that the notice was not served on the justice, it was correctly decided.

A clear case of conflict, however, is that of *Gray* v. *Hannah*, reported in 30 *How.* 155. This was a general term decision, of the seventh district. It takes the widest departure from *Fox* v. *Nellis*, and *Loomis* v. *Higbie*, of any case found in the books. In that case the judgment recovered before the justice was $86, and the specification in the notice of appeal was, " that the judgment ought to have been more favorable to the appellant, in that it should not have been for a sum exceeding $35 with costs, and the defendant therefore offers to allow such judgment to be corrected accordingly." The plaintiff made no offer to correct the judgment, and recovered less in the county court than in the justice's court. The county court allowed the appellant costs, but the Supreme Court reversed the order, and held that the notice above mentioned was insufficient to carry costs to the defendant. They held that *Fox* v. *Nellis*, and *Loomis* v. *Higbie*, and the other cases holding the same rule, were not authority. They not only adopt the dictum in *Forsyth* v. *Ferguson* " that the notice must specify, separate and distinguish in a tangible form, so that the respondent may comprehend the precise change in the judgment to which he is willing to consent," which the statute did not require, but they add that such a notice does not specify, point out, or distinguish any particular error; and in a most able argument conclude by saying that any other interpretation of the statute than such as they have given, they " cannot but see does great injustice."

All these decisions were prior to the amendment of the statute in 1866, and it is seen from this review, that equally able jurists, in the different judicial districts of the State, had arrived at diametrically different conclusions, in giving interpretation to the same language in the same statute. With equal desire to express the true meaning and intent of the same legislative enactment, it is seen that an unfortunate difference existed in the courts; and directly conflicting opinions found their way into the reports, to the great embarrassment and perplexity of parties and to the profession. How could counsel feel secure in giving advice? Courts of coördinate authority, equally respectable in learning and ability, had put themselves in direct conflict. This was the condition of things when, in 1866, the legislature, perhaps with the laudable intent to relieve this very embarrassment, and to make the intent of the statute more plain and clear, amended this section, 371, by this addition in regard to such notice of appeal. " *If he* (the appellant) *claims that the amount of judgment is less favorable to him than it should have been, he shall state what should have been its amount.*"

After this amendment, it seemed to be the impression of the bar, and indeed of many judges of the courts, that this amendment had wrought a change in the statute, in calling for more certainty in the form of the notice of appeal; that a failure to state the *certain* specific sum, in unqualified language, was to be held a defective notice; and that it was not an equivalent, nor a compliance with the letter or spirit of this amendment, to say the judgment ought not to exceed a certain sum. It was so interpreted in the fourth judicial district, and so adjudged, and in other districts. It still remained a controverted question. This was the condition of things when the case at bar was before us for review. Several general term decisions, some unreported, were presented to us, holding that a case that stated that the judgment should not exceed a certain sum

Younghause *v.* Fingar.

did not state, in the language of the amendment, "*what should have been its amount:*" We reluctantly bowed to the apparent weight of authority, in cases decided after the amendment of 1866. We did not regard this new requirement as jurisdictional; the court had jurisdiction of the case, whether this notice, in that *particular,* was defective or not; nor did we believe that this proceeding arising in a justice's court was to be construed with penal strictness; and we cordially adopt the language of the Court of Appeals, that "liberality in the construction of this statute to attain the purpose, should always be indulged, especially in a justice's court proceeding;" that the notice is sufficient if it gives the respondent notice of the *particular* complained of, in the amount of the judgment. It is then for the respondent to correct it. The opinion of the Court of Appeals is but the same doctrine that was laid down in *Fox* v. *Nellis,* and *Loomis* v. *Higbie.* The amendment of this section, in 1866, must have been fully and duly considered by them; for the language of that amendment is contained in the opinion they have given.

While we would advise the profession in bringing this class of appeals, to observe greater caution by following more closely the language of the statute, and not to adopt the notice in this case as a *good* precedent, we hold that the notice, nevertheless, was sufficient.

The result is that the judgment of the county court of Columbia county, so far as it adjudges costs to the plaintiff, is reversed and the said judgment modified, and restoration ordered, according to the order entered with the clerk at the city of Albany.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, November 12, 1872. *P. Potter, Parker* and *Daniels,* Justices.]