## GEORGE P. HOOPER *versus* HORACE CUMMINGS.

In a deed, the words "providing they (the grantees) fence the land and keep it in repair," create a condition subsequent, which is to be taken most strongly against the grantor, to prevent a forfeiture.

Where the land has remained more than fifty years unfenced, it is a breach of the condition; but, if the grantor with full knowledge of the breach of the condition, in the mean time, does not complain, enter or take any action to reclaim the land, it will be evidence tending to show a waiver of the condition.

At common law, none but the grantor, his heirs and legal representatives, can take advantage of a breach of condition subsequent.

When condition is annexed to a particular estate and afterwards by another deed the reversion is granted by the maker of the condition, the condition is gone.

TRESPASS, *quare clausum*, commenced July 25, 1856. Plea, general issue, with a brief statement, the substantial matter of which is:—That, on the 6th day of April, 1803, Jonathan Cummings, the defendant's father, being lawfully seized in fee of the close described in the plaintiff's writ, in consideration of ten dollars, conveyed the same to Nathan Woodbury, and four other persons named, all of Paris, being a committee appointed to build a meeting-house in said town,

and to the proprietors of said house, their heirs and assigns, "provided the said committee and proprietors would fence said land and keep the same in repair." That, on said 20th day of April, 1856, [the day of the alleged trespass,] said committee and proprietors all and each of them neglected and refused to fence said land and keep the same in repair, and, for a long and unreasonable length of time prior thereto, to wit, for fifteen years, had neglected and refused to fence said land, and permitted the same to remain common and unfenced during all that time. Whereupon the said Jonathan Cummings, in his own right, and the said Horace Cummings, by the command of, and as the agent and servant of the said Jonathan, on the said 20th day of April, 1856, entered into said close and took possession thereof, for breach and non-performance of said condition to fence and keep the same in repair, and for the purpose of revesting the estate, title and fee of said close, in the said Jonathan; and the said Jonathan Cummings, in his own right, and the defendant, as his servant, and by his direction, plowed and planted a small portion of said close, which, and the said entry, are the trespasses complained of in the plaintiff's writ.

Moses Hammond was admitted, under the statute, as a co-plaintiff.

At the August term, 1857, CUTTING, J., presiding, the trial of the action was commenced. The plaintiff introduced the following evidence: — Deed from John Porter to plaintiff, dated Dec. 3, 1838, recorded Feb. 13, 1857, conveying to plaintiff pew No. 41, in the new meeting-house on Paris Hill, in Paris, and one undivided sixty-fourth part of the remainder of said house, except the pews, and one undivided sixty-fourth part of the common around the same.

*Also*, a deed from same to Moses Hammond, of same date, conveying another pew, otherwise, the same. The close described in said deeds is the same described in the writ.

*Also*, a deed from Jonathan Cummings to Nathan Woodbury, Jairus Shaw, Ebenezer Rawson, Lemuel Jackson, Jr., and Benjamin Hammond, being a committee appointed to

build a meeting-house in said town, and to the proprietors of said house, dated April 6, 1803, recorded Sept. 14, 1804, conveying the close in controversy, "providing the said committee and proprietors fence the said land and keep the same in repair."

*Also*, a deed from Jonathan Cummings to Jesse Cummings, dated Feb. 20, 1804, recorded Sept. 8, 1806, conveying all the residue of his land, &c.

*Also*, Sylvanus Jackson, aged 73 years, testified that the meeting-house was built in 1803 ; that a fence was built at that time on the north side of the lot, and soon after the house was built, there was a fence on the south side, but does not know if there was a fence on the west side until Doct. Hamlin built it, soon after the meeting-house was built, after which, there was always a fence round the lot, except on the road, and, after the county common was laid out and the county buildings were erected, the fence included that. The proprietors have since occupied it, sometimes used as a training field. The witness further stated that he had not examined the fence since 1840, and in 1815, moved to where he now lives, two and one-half miles from this place.

Jonathan Cummings lived on the road directly opposite to the meeting-house. The witness never knew him to claim to own the land since the meeting-house was built.

*Also*, Moses Hammond, who testified that he was sixty-six years of age, and had lived forty years on Paris Hill. The common has been fenced on the north, west and south sides until the county purchased their lot, when the two commons were fenced together, and, when the county jail was erected, they took the fence away. The new fence round the common was built six years ago, and includes the place of the trespass. The witness never knew Jonathan Cummings to claim any interest in this lot since he conveyed it to the committee. Since 1840, there has not been a fence the whole way from Bemis' to the west line of the lot. I mean the south line of the lot on the plan ; on this line, there is no fence now, nor has there been on the whole of it since 1840.

*In defence :* ——

Horace Cummings, defendant, testified that in April, 1856, by direction of his father, Jonathan Cummings, he went on to this lot, plowed up a small part of it, and planted it with potatoes. His father had previously staked it out, and said he claimed the property under the deed. We acted by advice of counsel. My father had given us a quit-claim deed of this land previous to this time.

Plaintiff here offered a copy of a deed from Jonathan Cummings to Horace and George Cummings, dated Dec. 29, 1855. I have not that deed now in my possession. I do not know where it is.

Here, defendant's counsel objected to what the witness had previously stated as to the deed.

*Also,* George H. Cummings, who testified, I went with my father when he staked out a piece of land, which I and Horace afterwards plowed. When my father was on the land, he said he went there because they had forfeited it. He said he wanted to pre-empt it, or something like it, and then claimed it as his.

*Also,* Jonathan Cummings, who testified, I am now eighty-five years old. I went on and staked out a piece on this lot for my boys to plow. I claimed it then, because the committee had not fulfilled the conditions in the deed, and directed the boys to take possession of the lot as mine.

After the foregoing evidence was introduced, by agreement of parties, the case was taken from the jury, and, on report of the evidence by the presiding Judge, submitted to the full Court, who are to render such judgment by nonsuit or default, as may be conformable to law and the facts. The writ, pleadings, deeds, and office copies of any other deeds pertinent to the issue, legally admissible, which either party may introduce at the hearing, are referred to and made part of the case.

*R. K. Goodenow,* argued for plaintiffs : ——

1. The words of condition are of no effect, being insufficient to prevent the title from passing without limitation.

*Freeman's Bank* v. *Vose*, 23 Maine, 98; *Abbott* v. *Pike*, 33 Maine, 204.

2. If of any effect, they are operative on the covenant of warranty, and not upon the title.

3. If they must be regarded as applicable to the grant, they only impose on the grantee the obligation to fence, and to relieve the grantors from fencing. *Newell* v. *Hill*, 2 Met. 280.

4. If they can be regarded as making a condition attached to the grant, the condition is a condition subsequent, and advantage can be taken of a breach only by an entry for that purpose by the owner of the reserved right. R. S., c. 73, § 1; *Bangor* v. *Warren*, 34 Maine, 525; *Maverick* v. *Andrews*, 25 Maine, 505, and cases cited.

5. But there has been a performance to the acceptance of the grantor, and those owning the adjoining lands, for more than fifty years, and a waiver of all objection, and the grantor has, since 1804, ceased to have any interest in the adjoining lands.

*Record & Walton*, for the defendant: —

1. To the point that the deed was conditional, cited, *Gray* v. *Blanchard*, 8 Pick. 284; *Hayden* v. *Stoughton*, 5 Pick. 528; Taylor's Landlord & Tenant, § 279, p. 178; Comyn's Dig. Condition, A, 2; Webster's Quarto Dictionary, Provided.

2. To the point, that to fence, is to inclose with a hedge, wall, line of posts and rails, or something else that will prevent the escape or entrance of cattle, and that the whole of said land was to be thus inclosed, cited, 1 Greenl. Ev. § 278; Webster's Quarto Dict., Fence, n, fence, v.

3. To the point that Jonathan Cummings, having the *jus disponendi*, had a lawful right to annex this condition, the same not being illegal, repugnant or impossible, cited Taylor's Landlord & Tenant § 280; Broom's Legal Maxims, (4th ed.,) p. 299.

4. To the point that the condition is valid and ought to be regarded, nothwithstanding Cummings, the grantor, may have no special interest in its performance, cited *Gray* v. *Blanchard*, 8 Pick. 284; *Jackson* v. *Brownell*, 1 Johns. 267.

5. To the point, as a matter of fact, that the condition has not been performed, attention is called to the testimony of Moses Hammond, one of the plaintiffs, on cross-examination where he says, "that since 1840, there has not been a fence the whole way on the south line of the lot, and that for about six years, there has been no fence on any portion of it," and, to the deed, where the length of this south line will be found to be 19 rods, and to the fact there is no pretence that there has ever been a fence between this land and the highway by which it is bounded.

6. To the point that the obligation "to fence said land and keep the same in repair," being continuous and the breach continuous, lapse of time will not create a limitation bar, or be evidence of dispensation or waiver of the condition, cited *Bleecker* v. *Smith*, 13 Wend. 530; *Jackson* v. *Allen*, 3 Cowen, 220.

7. To the point that the entry of Jonathan Cummings defeated the estate of the plaintiffs and revested the title in him and he became seized of his original estate in the premises, cited 1 Hill. Ab. p. 264, § 49.

The opinion of the Court was drawn up by

CUTTING, J.—It appears from the report of the evidence in this case, *that* on April 6, 1803, Jonathan Cummings conveyed to Nathan Woodbury and others, all of Paris, "a committee appointed to build a meeting-house in said town," four acres and seven rods of land situated on Paris Hill—*that*, in the deed succeeding the covenants, were these word, "*providing the said committee and proprietors fence the said land and keep the same in repair*"—*that*, during the same year, the meeting-house was built—*that* the land was fenced, except on the highway, and the fence kept in repair until a few years previous to the institution of this suit, when a portion of it, on the south side, was suffered to decay or be removed—*that* the plaintiff is now the proprietor of one sixty-fourth part of the land, including a pew in the meeting-house.

The defendant justifies his proceedings upon the land, which

constitute the cause of action, as the servant of Jonathan Cummings, the original grantor, who, in the spring of 1856, had made a re-entry for a breach of the condition.

We may assume that the *proviso* in the deed created a condition subsequent, and, in this, we are sustained by most, if not all, the authorities, ancient and modern; notwithstanding it is to be construed strictly and most strongly against the grantor to prevent, if possible, a forfeiture of the estate. " If the word *proviso* be the speaking of the grantor, feoffor, donor, &c., and obliges the grantee, &c., to any act, it makes a condition, in whatever part of the deed it stands; and, though there be covenants before or after, is not material." 3 Com. Dig. 84, (Condition.)

And, we may further assume, that the evidence discloses a breach of the condition, inasmuch as the land has never been fenced on the highway, and has remained in that situation for more than half a century. And, in the mean time, the grantor, living in the vicinity, has permitted the meeting-house to be erected and maintained, and the pews and corresponding portions of the lot to be conveyed to members of the parish, at different periods from the date of his deed to the present time. And all this was done without complaint, or any action on his part to reclaim the land. If ever there could be a waiver of a condition evidenced from the conduct of a party, this would seem to be such a case; certainly, as much so as those cases where a person stands silently by and permits property to be conveyed to which he has a legal claim. Lord COKE remarks, 1 Co. Litt. 218, " Regularly, when any man will take advantage of a condition, if he may (can) enter, he must enter; and, when he cannot enter, he must make a claim; and the reason is, for that a freehold shall not cease without entry or claim, *and also feoffor or grantor may waive the condition at his pleasure.*" Vide *Willard* v. *Henry,* 2 N. H. 120, where a non-claim for a much shorter period of time, was held to be a waiver of the condition. See, also, *Commonwealth* v. *Tenth Mass. Turnpike Corporation,* 11 Cush. 174. The cases cited from 13 Wend. 530, and 3 Cow. 220, are not

applicable here; there the Court were giving a construction as to the effect of certain acts under a conditional *lease*, which created a tenancy for years, and not a *freehold* estate. It was only a reiteration of ancient law to be found in Cro. El. 553. "If a condition upon a lease for years be, *for non-payment of rent to re-enter;* the acceptance of rent at a subsequent day, is a dispensation," but only for an antecedent breach, "for he affirms the estate to have continuance." 3 Com. Dig. 132. The condition usually inserted in leases, is for the purpose of securing the payment of rent, and even a strict construction against the lessee, would operate no unnecessary hardship on him, for at most, he would only be obliged to yield up that for the use of which he had agreed to pay an annual compensation.

But we have taken another view of this case, which, to us, appears decisive. It is well settled at common law, that none but the grantor, his heirs and legal representatives can take advantage of a breach of a condition subsequent, and none others can re-enter or claim the estate. And the R. S., c. 94, § 1, has not changed the law in that particular. *Bangor* v. *Warren*, 34 Maine, 324.

Now, it appears in this case, that the grantor, Jonathan Cummings, by his deed dated Dec. 29, 1855, conveyed to Geo. H. and Horace Cummings, all his right, title and interest in and to the premises in controversy; at which time he had not entered. "But, when condition is once annexed to a particular estate, and after, by *another deed*, the reversion is granted by the maker of the condition, the condition is gone." 5 Vin. Ab. 306. Then there is no person capable of making the entry or claim; the grantor cannot, for he has parted with his interest—the grantee cannot, because he is a stranger to the condition.

But it may be contended, that an office copy of the deed was not admissible in evidence. It was not introduced at the trial, but was presented at the argument under the agreement in the report, that "office copies of any other deeds pertinent to the issue, and legally admissible, which either

party may introduce at the hearing, are referred to and made a part of the case." The party offering such office copy in evidence is not a party to the deed, nor claims as heir, nor justifies as servant of the grantee or his heirs. *Vide* Rule 26, as to the admissibility of office copies.

According to the agreement of the parties, the defendant is to be defaulted, and judgment rendered for $1, damages.

TENNEY, C. J., HATHAWAY, MAY, GOODENOW, and DAVIS, J. J., concurred.