# CHARLESTON.

WHITE *et al v.* BAILEY *et al.*

Submitted March 27, 1908.   Decided April 27, 1909.

65   573
66   521
66   614

1. DEEDS—*Rescission—Non-Performance by Grantee.*

    Neither the reservation of a lien for maintenance and support in a deed of conveyance, made in consideration of a covenant to support and maintain the grantor, nor the insertion therein of a clause, giving him a right to re-enter and use and occupy the land during his life, in case of non-performance of the covenant, extinguishes, cuts off, or prevents right of rescission in the grantor, in the event of failure of the grantee to perform the covenant. (p. 575.)

2. SAME—*Construction—Purpose.*

    A deed should be so construed as to give effect to all of its parts and harmonize them, but functions and purposes, not expressed nor necessarily implied, should not be added after a reasonable and important function for every clause, which the parties may have had in contemplation, has been already perceived. (p. 576.)

3. SAME—*Construction—Implied Effect or Purpose.*

    Generally a provision, effect or purpose is not read into an instrument, as having been implied, unless necessity therefor is found in terms used, or purposes expressed, therein. (p. 577.)

4. SAME—*Construction—Intent—Extrinsic Circumstances.*

    The purpose and object of the parties to a deed or other contract, as shown by the instrument itself, read as a whole, at the time of its execution, in the light of the subject matter, the situation of the parties and the circumstances surrounding them, constitute the safest and best guide to their intention. (p. 578.)

5. EQUITY—*Laches—Prejudice from Delay.*

    Mere delay, for a long period of time, in asserting a cause of action, cognizable in equity only, working no injury or prejudice to the defendant, in any way, bars relief only on the presumption of abandonment, which may be overthrown by proof of conduct, showing the contrary. (p. 579.)

6. EXECUTORS AND ADMINISTRATORS—*Power to Set Aside Deed.*

    The executor of the will of a deceased person may prosecute

a suit to set aside, for failure of consideration, a deed, convey-
ing away land he is authorized by the will to sell. (p. 579.)

Appeal from Circuit Court, Lewis County.

Bill by A. P. White, executor of the will of William J. Bailey,
deceased, and another, against Bland Bailey and others. Decree
for complainants, and Bland Bailey appeals.

*Affirmed.*

W. W. BRANNON and A. B. & R. F. FLEMING, for appellant.

LINN & BLAND and JOHN BASSEL, for appellees.

POFFENBARGER, JUDGE:

Bland Bailey complains of a decree of the circuit court of
Lewis county, cancelling and setting aside a deed by which his
father, William J. Bailey, had conveyed to him a tract of 208
acres of land, upon a bill filed for the purpose by the executor
of the will of said William J. Bailey and Broaddus College, a
beneficiary of a trust created by said will.

The deed so set aside conveyed the land to the appellant, July
12, 1889, in consideration of one dollar and a covenant, on the
part of the grantee, "to remove to and occupy, use and culti-
vate in a proper manner said tract of land, for the exclusive use
and benefit of said Bland Bailey and is to support and maintain
at his exclusive costs and charge, the said William J. Bailey,
and his said wife during their joint lives, and the life of the sur-
vivor of them in sickness and in health, in a comfortable and
careful manner in all respects, and on said land in the dwell-
ing house of the said William J. Bailey, thereon, during the
time to be occupied by the said William J. Bailey, and wife
with the said Bland Bailey and family." A lien for support and
maintenance was expressly retained and the following clause of
re-entry inserted: "The right is reserved to said William J.
Bailey to re-enter said land, and use and occupy the same dur-
ing his life." The grantee, with his family, immediately moved
into the dwelling house with the grantor and remained there
about nine months, when, becoming dissatisfied, he went away
and never returned, leaving the grantor in possession. About
two years after the execution of the deed, June 18, 1891, Wil-
liam J. Bailey, having no other land and assuming he had be-
come re-invested, by the breach of the covenant to maintain and

support him, with the title, legal or equitable, to the land so conveyed, or a right to acquire the same, executed another deed, purporting to convey, to certain trustees for Broaddus College, a corporation, an undivided half of the tract, and a will by which, after giving numerous legacies, he directed the executors, therein named, Marcellus White and Perry (A. P.) White, to sell the residue of that and any other land he might afterward acquire and pay the legacies. Among the legacies, there was one of $800.00 to Marcellus White and another of $400.00 to Perry White, given by the fourteenth and fifteenth items, respectively, subject to certain conditions, not material here. On the same day, he executed a codicil, directing the payment of $3,000.00 out of his estate to Broaddus College, in the event the deed, executed to the trustees for its benefit should fail to pass title to the land, and gave this legacy precedence over all others except the two above mentioned. By another codicil, made the same day, he reduced Marcellus White's legacy to $600.00. He retained the control and management of the land until his death, sometime in the year 1903. The bill seeks instruction and guidance of the court, respecting the duties of the executor in the premises and a settlement of the estate.

Unless principles well settled, generally recognized and often declared by this Court are rendered inapplicable by the peculiar terms of the deed and the time and circumstances of the institution of the suit, the decree is manifestly right. This is frankly admitted. The principal contentions in the brief of counsel for the appellant are: (1) the provisions of the deed, reserving security for performance of the covenant and prescribing a remedy for breach thereof, precluded resort to any other; (2) relief is barred by laches. The others are merely argumentative, collateral and subsidiary in character.

The main reliance for reversal is the re-entry clause. As, by the deed, the grantor conveyed the fee simple title and then reserved a lien for support and a right to re-enter upon the land and "use and occupy the same during his life", it is said he was limited to these two methods of relief, since the parties contemplated possibility of failure and undertook to provide for it. In other words, it is contended that, by adding the words, "and use and occupy the same during his life", he limited the purpose of his re-entry and the scope and extent of his relief, in respect

to title, to the recovery of a life estate. This view seems to rest upon the assumption of the existence of an ambiguity, calling for the application of a rule of construction requiring the terms of an ambiguous deed to be taken most strongly against the grantor. Resort is not had to this rule, unless ambiguity or uncertainty remain after all others have been vainly appealed to in an effort to ascertain the meaning of the instrument. 2 Kent. Comm. 556; 13 Cyc. 609; Chitty Con., p. 137; Ham. Con., sec. 413. Nor will uncertainty or a doubt be unnecessarily introduced or raised. It must appear from the terms. When the terms are plain and a reasonable function for all clauses or provisions, contained in the instrument, is clearly discernible, and no necessary friction, repugnancy or inconsistency will result, and nothing in the purposes or obects contemplated, require any further effect to be given to any clause, the instrument should have effect according to the plain meaning of the terms used. All authority opposes construction, or the reading in of matter not expressed, when it is not rendered necessary in some way or for some reason. *United States* v. *Fisher,* 2 Cranch 358 (202) ; *Jackson* v. *Lewis,* 17 Johns. 475; *Turnpike Co.* v. *People*, 9 Barb. 161; *Morgan* v. *Railroad Co.,* 96 U. S. 716. These cases involved the interpretation of statutes, but the same rule applies in the interpretation of contracts. Chitty Con., p. 113; Hammon Con., pp. 811-13, sec. 412; Devlin Deeds, sec. 836.

What function could the re-entry clause have been intended to perform? Its object was to enable the grantor to regain possession in case of necessity. That it was not intended as a full, complete and exclusive remedy, in case of failure, is made apparent by the retention of a lien, reaching beyond the supposed life estate to the fee. Many contingencies might arise. The grantee might die, leaving only a widow and children, wholly incapable of managing the farm so as to sustain themselves and to render the support, stipulated for, or he might become an invalid, in consequence of which failure could occur under peculiar circumstances and from unavoidable causes, such as might make it desirable to forego the equitable right of rescission, provided the grantor could take control himself or substitute some person capable of perfecting the object both parties had in view. A general re-entry clause would have made it necessary, under such conditions, to wholly terminate the estate of the grantee or

allow it to exist to the great disadvantage and embarrassment of the grantor. No right of re-entry at all would have made it still worse, as possession could not then have been rightfully regained, until after a decree of rescission, perhaps delayed by protracted litigation. The clause of re-entry may also have been intended to supplement the lien for support, since any attempt to enforce that might have met with resistance, causing delay. Thus it appears to be wholly unnecessary to say this clause was intended to cut off the equitable right of rescission, in case of non-performance of the covenant, in order to find an important function for it to perform. Moreover, there is no express waiver of the right of rescission, nor, indeed, any reference to that right by any word used in the deed. It does not deal with that subject at all. It relates solely to the right of possession, as a means of realizing support and maintenance from the land, treating it as that of the grantee, in case the grantor should desire to do so. It creates a right under the contract, not a right against it, widely different in nature. With what does this clause, so read, conflict? Plainly not with any express words of the deed. It is inconsistent with nothing except a mere unnecessary, and, therefore, fanciful, implication, or rather theory as to intent, not a necessary implication, for the clause may perform important and highly beneficial functions, other than that of relinquishing right of rescission for adequate cause. If no purpose could be assigned to it other than that of barring right of rescission, an implication might be said to arise from necessity, presumption against intention to insert useless clauses being recognized and entertained by the courts.

One of the best and most potent indices of the intention of the parties to a deed or other contract is the purpose disclosed by it, considered as a whole in connection with its subject matter and the situation and circumstances of the parties. The grantor, seized of a good farm, conceived the idea or purpose of conveying it in fee, in consideration of support and maintenance for himself and his wife. The grantee was a nephew, not a member of his immediate family. There are no words in the deed importing a gift. Tested by its terms, it conveys the land for a valuable consideration and nothing else. The consideration was entire, going to the whole estate conveyed. It is not to be presumed he intended the grantee to have either the fee simple title

or the remainder in fee, without rendering the consideration stipulated for. The construction contended for would have made the deed operate a gift pure and simple as to all except a life estate, and the grantee need never have performed his covenant. Thus he would have obtained by far the most valuable part of the estate without rendering anything for it. This conflicts with the purpose disclosed by the terms of the deed. It purports a sale of the entire subject, not a gift as to any of it. It bound the grantee to remove to and occupy, use and cultivate the land and support and maintain the grantor and his wife on it in a comfortable and careful manner. Under this construction, he need not have done so. He could have compelled the grantor to earn his own living on the land as he had previously done, looking only to him for damages for breach of the covenant, and, relying upon the right to sell what had been his own land as security. If unable to earn his living and compelled to sell the land, he might then have been under the necessity of selling his own roof from over his head. Plainly no such results were ever contemplated by either party.

It is difficult to perceive any distinction between the effect of this clause and that of the clause reserving a lien for support and maintenance, upon the right of rescission. If one is exclusive of that right, why is not the other? The reservation of the lien contemplates possible failure of the grantee to render the support stipulated for, constituting the consideration. It affords a means of relief or remedy on the happening of such a contingency. Its incorporation in the deed shows that it was foreseen by the parties. What more can be said of any other clause, giving a right to re-enter and hold the land during the lifetime of the grantor? We have two decisions, setting aside deeds, conveying land in consideration of a covenant for support, and containing clauses of forfeiture for failure of performance, *Goldsmith* v. *Goldsmith*, 46 W. Va. 426, and *Fluharty* v. *Fluharty*, 54 W. Va. 407. Equity never enforces a forfeiture and did not do so in those cases. It rescinded the contracts, set them aside wholly, for failure of consideration. The argument used here would have denied equity jurisdiction there and remitted the plaintiffs to actions at law for recovery of the possession under the forfeiture clauses. Those cases are express authority for the position that the insertion of a forfeiture clause does not

preclude right of rescission on the theory of substitution, prescription of an exclusive remedy or otherwise. These decisions say, in effect, that a mere surmise or conjecture as to intent, will not be read into a deed. Necessity in some sense is a prerequisite. It is the ground upon which every implication arises.

The doctrine of laches cannot be invoked. The appellant was not in any sense prejudiced by the delay and the intent of the grantor not to abandon his right of rescission is placed beyond possibility of doubt. He retained possession until the time of his death. Two years after the deed was made, he endeavored to dispose of the property to other parties by deed and will. Mere delay for a long period of time, standing alone, does no more than raise a presumption of intent to abandon the cause of action, if it be one of exclusive equity jurisdiction. *Depue* v. *Miller,* decided at the present term; *Hale* v. *Hale,* 62 W. Va. 605; *Pusey* v. *Gardner,* 21 W. Va. 469; *Cranmer* v. *McSwords,* 24 W. Va. 594; Kerr on Fraud & Mistake 305; *Pickering* v. *Stamford,* 2 Ves. Jr. 593; *Railway Co.* v. *Gregg,* 101 Va. 308; *Bell* v. *Wood,* 94 Va. 677. Even long periods of delay do not bar, if the intent to abandon is negatived by conduct of the party showing the contrary. *Berry* v. *Wiedeman,* 40 W. Va. 36; *Jamison* v. *Rixey,* 94 Va. 342; *Roberts* v. *King,* 10 Grat. 184.

The only other question deemed worthy of consideration is, whether any person other than the grantor can prosecute this right of rescission. If the plaintiff were a mere assignee of the cause of action, his right to sue would be gravely doubtful. But he is the representative of the estate to which it belongs and sues as such. Hence, there is no shadow of maintenance and champerty, forbidding entry to courts of equity in so many cases, reported in the books. Nor is the cause of action one that dies with the person. *Fluharty* v. *Fluharty,* cited; *Booth* v. *Fuller,* 35 N. Y. App. Div. 117; *Kent* v. *Davis,* 89 Ga. 151; *Hensley* v. *Hensley,* 30 S. W. 613.

Seeing no error in the decree, we affirm it, with costs and damages.

*Affirmed.*

BRANNON, JUDGE, (*dissenting*):

I am decidedly averse to the decision in this case. I go upon the letter of the deed, the contract between the parties. The

deed is an absolute grant of the fee. Its consideration, its vital purpose on the grantor's part was support of himself and wife. To secure this he chose his own remedies in case of the grantee's default to give such support. He chose two remedies, one a lien, the other a right to re-enter and hold for his life, in other words reserved a life estate on the contingency of failure to support. His only object being support he did not reserve right to re-enter absolutely and hold the fee, but only for his life, for that was all he asked. He did not desire to take back the fee, but only a life estate. He desired, in case of default, to choose one or the other remedy. He might not want the land, but money for support, and therefore he reserved a lien, which would hold the land liable in a court of equity for money support. On the other hand, he might prefer to hold the use of the land for life, and therefore he reserved a life estate. These remedies were regarded efficient, and as far as he went. He took no note of the fee after his death. Now, the decree takes back, not a life estate, but the fee. For what purpose? To support the grantors and wife? Not at all. They are dead. The grantors only reserved support. It cannot be rendered now, unless we can give bread to the dead. That was the grantor's sole purpose? It cannot be accomplished. The fee goes, not for Bailey's support, but to others. Were it not that the parties fixed their own remedies, I would not hold the opinion which I do hold. Bailey did not sue to enforce the lien or cancel the deed. This Court gives a remedy taking back the fee, whereas the grantor stipulated that he could take back only a life estate; that would be sufficient for support, as he considered. I repeat that grantor Bailey inserted a clause of forfeiture for an estate for his life only, and the court gives him a clause of forfeiture forever. He reserved a life estate only, and he could not vest in Broaddus College a fee by a later deed. In *Lowman* v. *Crawford,* 99 Va. 688, was a deed in consideration of support, and the court held that equity would cancel it for default, giving as its reason that there was no clause of re-entry, indicating that where there is such clause, that is the remedy, and that must govern.

As I have stated the deed passed to Bland Bailey an absolute fee. There was left in William J. Bailey nothing but the right to re-enter to execute the condition. Failure to support was a condition of forfeiture. Could a grantee of Bailey take the right

to enforce this forfeiture? In *Schulenberg* v. *Harriman,* 21 Wall. 44, an act of Congress enacted that certain lands unsold after ten years should revert to the government if the railroad should not be then completed. The court said that such provision was "no more than a provision that the grant should be void if a condition subsequent be not performed. In Sheppard's Touchstone it is said: 'If the words in the close or conclusion of a condition be thus: that the land shall return to the enfeoffor, &c., or that he shall take it again and turn it to his own profit, or *that the land shall revert,* or that the feoffor shall *recipere* the land, these are, either of them, good words in a condition to give a re-entry—as good as the word 're-enter'—and by these words the estate will be made conditional. ' * * * * And it is settled law that no one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee, but the grantor or his heirs, or the successors of the grantor if the grant proceed from an artificial person; and if they do not see fit to assert their rights to enforce a forfeiture on that ground, the title remains unimpaired in the grantee. The authorities on this point, with hardly an exception, are all one way from the Year Books down.' " We find in Tildman on Real Property, sec. 207, this: "Conditions are reserved only to the grantor and his heirs. They cannot be reserved for the benefit of third persons. As a general rule, therefore, only the grantor and his heirs have a right to enter upon condition broken, and they lose their right if they should convey away the reversion in them. The right of entry is not an estate, not even a *possibility of reverter;* it is simply a *chose in action.* And although it has been held that an express condition can be devised with the reversion, and the devisee and his heirs enter for the breach, yet such a condition cannot be aliened or assigned, and does not pass with a grant of the reversion." *Hopper* v. *Cummings,* 45 Me. 359, holds: "At common law, none but the grantor, his heirs and legal representatives, can take advantage of a breach of condition subsequent. When a condition is annexed to a particular estate and afterwards by another deed the reversion is granted by the maker of the condition, the condition is gone." In *Nicoll* v. *Railroad,* 12 N. Y. 121, it is held that "right of entry is not a reversion or an estate in land, and it will not pass by assignment or by a convey-

ance of the premises held subject to the condition. Accordingly where the grantor of premises on condition subsequent, afterwards conveyed the same to a third person and there was subsequently a breach; *Held,* that the latter could not divest the title of the grantee on condition." In *Southard* v. *Railroad Co.,* 26 N. J. L. 21 (2 Dutcher), we find it held that a contingent estate or a right for a condition broken was not devisable at common law and the condition of a deed could only be taken advantage of by a party to it or privies in right and representation, as the heirs of natural persons or the successors of artificial persons. The opinion says: "It is a rule of the common law, that none may take advantage of a condition in *deed* but parties and privies in right and representation, as the heirs of natural persons and the successors of politic persons; and that neither privies nor assignees in law, as lords by escheat; nor in deeds, as grantees of reversions; nor privies in estate, as he to whom the remainder is limited, shall take benefit of entry or re-entry by force of a condition. Shep. Touch. 149; Co. Lit. 214, a; Lit., sec. 347; Doct. and Student 161, ch. 20; Perkins, sec. 830; 4 Kent 127; 2 Cruise Dig. ch. 2, sec. 49." In *Avelain* v. *Ward,* 1 Vesey Sr. 422, it is held that "if there is a devise to a stranger, not the heir at law, upon a condition subsequent, the devisee cannot take advantage of the breach; for the benefit thereof is not devisable, but must go in privity to the heir at law of the grantor, who must enter for the breach, not the devisee." 2 Washnurn on Real Property, sec. 954 says: "But of conditions in deed no one but he who creates the estate or his heirs, as for instance the heirs of the devisor, or in case of a devise of the contingent right, such devisee or his heirs, can take advantage by entering and defeating the estate. It is a right which cannot be aliened or assigned, or pased by a grant of the reversion at common law." As to the right of the devisee to enforce a condition the bulk of the common law is against it and Tildeman R. Prop., in note to sec. 207, p. 279, says that that rule is local in Massachusetts. Why not? A grantee in a deed cannot enforce the condition, and a devisee takes not by descent but by purchase, is a purchaser just as a grantee unless he is heir and then he takes, not by devise, but by descent. Therefore, the Broaddus College trustees could not enforce that condition, nor could Bailey's executors; for the will gave the executors a naked power,

not coupled with title or interest, as the will only gave them power to sell, invested them with no estate. Having no right to enforce this condition, strangers to it, the trustees and executors cannot rescind in equity. Bailey did not grant the trustees right to sue for rescission, nor did his will grant it to his executors.

Some days after writing the above I concluded to make further examination, and I have made it, with the result that I am more decided in my dissent than I was then. And I will supplement the above with some other authorities. I would recall to mind that William J. Bailey's deed to Bland Bailey passed from William J. Bailey a fee, every vestige or morsel of title, and vested the same in Bland Bailey forever, unless William J. Bailey had revested himself with title, and that could be done only by re-entry, or the enforcement of the lien and purchase of the land by William J. Bailey. No suit to enforce the lien was brought. No re-entry was made. Therefore, William J. Bailey had no estate in him when he made the deed to the trustees of Broaddus College or when he made his will. The books teem with the doctrine that where title has passed with condition subsequent defeating the estate for its breach by re-entry, there must be re-entry to revest the estate in the grantor. In 1854 the case of *Nicoll* v. *Railroad,* 12 N. Y. 121, was fully considered, and it was held that "A mere failure to perform such a condition does not devest the title. There must be an entry, or what is equivalent thereto by the statute, by the grantor or his heirs, for a breach of the condition to forfeit the estate. This right of entry is not a reversion or an estate in land, and it will not pass by assignment or by a conveyance of the premises held subject to the conditions." In 1896 the New York court had this subject again under full consideration in *Upington* v. *Corrigan,* 151 N. Y. 143, and it reiterated this doctrine. It was there said that no action could be maintained by the assignee to recover the land whether the breach was before or after the assignment, and no one but the grantor or his heirs could take advantage of the forfeiture. That re-entry is required to revest title I add the following authorities: *Bowen* v. *Bowen,* 18 Conn. 535; *Board* v. *Trustees,* 63 Ill. 204; *Tallman* v. *Snow,* 35 Me. 342. *Hubbard* v. *Hubbard,* 97 Mass. 188 (93 Am. Dec. 75); *Morris* v. *Hoyt,* 11 Mich. 9; *Adams* v. *Lindell,* 72 Mo. 198; *Rollins* v. *Riley,* 44 N.

H. 9; *Vail* v. *Railroad Co.,* 106 N. Y. 283 (60 Amer. R. 449); *Phelps* v. *Chesson,* 34 N. C. (12 Iredell) 194; *Kibler* v. *Luther,* 18 S. C. 606. *Ohio Iron Co.* v. *Auburn Iron Co.,* 64 Minn. 404, holds that, "The right of re-entry cannot exist as an independent condition, but only as an incident to an estate or interest for the protection of which it is reserved. The right of re-entry is not an estate or interest in land, nor does it imply the reservation of a reversion, and when enforced the grantor is in through the breach of the condition, and not by reverter." The Supreme Court of the United States in *Ruch* v. *Rock Island,* 97 U. S. 693, citing a host of authorities, held that breach of a condition subsequent, not followed by limitation over to a third person, does not *ipso facto* work forfeiture. It only vests in the grantor or his heirs a right of action which cannot be transferred to a stranger, which they cannot without actual entry enforce by suit for the land. We find in 5 Ballard on Real Property, note to section 270, that right of re-entry for breach of condition subsequent, "is a mere right in action, not an interest in land; that it is not assignable nor grantable; that it descends to the grantor's heirs, but does not pass by a conveyance."

It may be suggested that these principles of common law everywhere held have been changed by section 5, chapter 71, Code, providing that, "Any interest in or claim to real estate may be disposed of by deed or will." That statute cannot apply, because it requires some estate or actual interest for the foundation of a claim to come under that statute. It was suggested to the New York court in *Nicoll* v. *Railroad,* 12 N. Y. 121, and *Upington* v. *Corrigan,* 151 *Id.* 143, that its statutes of wills read "every estate and interest in real property descendible to heirs may be devised," and another statute said that "expectant estates are descendible, devisable and alienable in the same manner as estates in possession"; but the court said that these statutes did not change the common law rule in this matter. The court said that the words "expectant estates" "include every *present right and interest,* either vested or contingent, which may by possibility vest at a future day, yet they do not include the mere possibility of a reverter, which the grantor has after he has conveyed in fee on condition subsequent. He has no present right or interest whatever, and no more control over it than a son has in the estate of his father who is living." The court denied in

those two cases that these New York statutes, though very broad, applied to such a case as this. If this statute could be held to change this organic principle of estates, held through the centuries, why did not that most reliable and eminent Virginia author, Professor Minor, realize it when he laid down in 2 Minor's Institutes 229, the following statement of the law: "The mere occurrence of the event which constitutes the condition does not at *common law,* of itself, defeat the estate, supposing it to be a *freehold,* because as a freehold can at common law only be created by the notoriety of *livery of seisin,* there is needed a *corresponding notoriety* in order to determine it. This corresponding notoriety is the *re-entry* of the grantor, or his heirs, supposing the grant to be a private one." Our statute, section 1, chapter 93, giving the grantee of any land let to lease or the reversion the same right against the lessee by action for entry upon any covenant or promise of the lease has no application. That is between landlord and tenant. There is no lease here. There is no reversion. Nor does section 16 have anything to do with this case. It recognizes as common law the rule above stated requiring actual re-entry, and changes that by dispensing with re-entry, but only by an action of ejectment. It gives no chancery jurisdiction.

But do the principles laid down show that a suit in equity for cancellation of the deed from Bailey to Bailey cannot be maintained? They do, because they show that William J. Bailey had no estate or present interest in the land. It had all gone out of him, and he could not therefore pass any interest or estate to the trustees of Broaddus College or to his executors. Section 16, chapter 93, will not help them to maintain ejectment, because to do so they must have "the right of re-entry," and we have seen that that is not conveyable or assignable, and the trustees and executors did not have a right of re-entry so as to maintain ejectment under section 16. This section does not *give,* create right or title; it only gives ejectment to one who already has right on which to enter. It would give Bailey action, without entry; but not his grantees. William J. Bailey did not confer upon them by word or otherwise right to sue for cancellation. Now, I ask how can a suit for cancellation, or any other legal proceeding, rest upon nothing, no title, no right? How can

the plaintiffs maintain any suit whatever having no right recognized in law?   How can a suit stand upon a nonenity?

In *Bangor* v. *Warren,* 34 Me. 324, it is held that under a statute giving execution on "all rights of entry into land," a right of re-entry for breach of condition could not be subjected, did not come under the statute, because none could enforce but the grantor or his heirs, citing 4 Kent and other authorities.   Tiffany's Real Prop., section 75, says that "not only will an attempted assignment be void, but it will have the effect of destroying the grantor's right to enforce the condition, which is in effect non-existent."   This is supported by *Rice* v. *Boston & W. Railroad Corp.,* 112 Allen (Mass.) 141, and *Hopper* v. *Cummings,* 45 Me. 359, which says that on conveyance the condition is gone.

I have above discussed the case on the theory that the grantor Bailey made no entry under the forfeiture clause; but that theory does not likely apply.   He made what in law is re-entry.   He was on the land when grantee Bailey left it.   The latter yielded the possession to grantor Bailey.   The grantor Bailey remained in possession, and assumed authority over the land, leased it, had it cropped.   Even if grantee Bailey had not consented, grantor Bailey being in sole possession when grantee Bailey quit possession, this in law was the equivalent of formal re-entry.   Being in possession already, he could not enter upon himself.   We cited authority in *Guffey* v. *Hukill,* 34 W. Va. 56 for the proposition that "No man can enter upon himself."   2 Washburn on Real Prop., 957 says:   "If the grantor is himself in possession when the breach happens, the estate revests in him at once without any formal act on his part, and he will be presumed, after the breach, to hold for the purpose of enforcing the forfeiture, unless he waive the breach."   Therefore, we must treat William J. Bailey as having himself re-entered for breach of condition, and thus reinvested himself with an estate.   But what estate was he invested with by such entry?   With a life estate by the letter of the deed; not with a fee.   Having exercised this right of re-entry he used the remedy given by the deed; he did this himself, and he could not have that remedy and also rescission in equity.   Having himself used this remedy, that was the extent of his remedy under the letter of the deed, and he could not convey any other remedy, by rescission or otherwise, to Broaddus

College or others. The only estate he had by such entry was a life estate, and he could confer no greater. "The right to re-enter means the recovery of possession in one way only." *Michael* v. *Fishel,* 169 N. Y. 381. There it is said that when parties have used the word "re-enter" it is presumed they used it in the common law sense. Note 7, 24 A. & E. E. L. 216. It was held in that case that the statute remedy by summary proceedings could not be resorted to. I here repeat that under the cases of *Lowman* v. *Crawford,* 99 Va. 688 and *Hukill* v. *Guffey,* 34 W. Va. 49, where a deed has a clause of re-entry, that is the remedy, and there is not the super-added remedy of rescission, especially where the re-entry is by deed only for a life-estate. The decision gives a fee, whereas re-entry by the letter of the deed gives only a life estate.

Thus whether we say that Bailey did not re-enter, or did re-enter, we reach the same conclusion, that is, that the plaintiffs have no right to maintain their suit.