**PEPPER et al. v. TRUITT et al.**

No. 3338.

Circuit Court of Appeals, Tenth Circuit.

Nov. 13, 1946.

---

2 45 Tex.Jur., Sec. 119.
3 45 Tex.Jur., Sec. 118.

4 But see Fritzmeier v. Texas Employers, 131 Tex. 165, 114 S.W.2d 236.

Riley Strickland, of Amarillo, Tex. (Grester H. LaMar, of Guymon, Okl., on the brief), for appellants.

James S. Twyford, of Oklahoma City, Okl. (L. E. Tryon, of Guymon, Okl., and Solon W. Smith, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS and MURRAH, Circuit Judges, and CHANDLER, District Judge.

248

MURRAH, Circuit Judge.

This suit was commenced on June 14, 1945, in the Western District of Oklahoma, by appellants, Dewey B. Pepper, Essie Ree Saxon and J. L. Saxon, as heirs and devisees of William D. Henderson, deceased, against W. J. Truitt and Lela Truitt, to set aside a conveyance of real estate executed by Henderson to appellees during his lifetime. The trial court sustained a motion of appellees to dismiss the complaint, and entered judgment for the defendants, on the grounds, first, that the cause of action, if any, was personal in Henderson and did not therefore survive his death; and second, the action is barred by the two or three year statute of limitation. Jurisdiction is based upon diversity of citizenship and requisite amount in controversy, both of which are admitted. The sole question is whether the pleadings, when construed most favorably to the pleader, state a cause of action upon which relief can be granted.

It was alleged in substance that Henderson had the utmost confidence in appellee, Lela Truitt, the former widow of his deceased brother, and on January 28, 1937, took up his abode with the Truitts at their home in Guymon, Oklahoma. That appellees orally agreed to "take care" of Henderson during his natural life, in consideration of which on February 2, 1937, Henderson executed his last will and testament in which the Truitts were designated his sole beneficiaries. That thereafter and on June 30, 1938, to better serve their purposes and intentions, Henderson, being weak in body and mind and under their influence, appellees, by reiterating their promise to take care of Henderson during his lifetime, persuaded and induced him to execute a warranty deed conveying certain described lands in Texas County, Oklahoma, to Lela Truitt. That the deceased did not intend to part with the title to said land unless the promises made by appellees to care for him during the balance of his life were kept. The complaint further alleged that after procuring possession of the land, the Truitts requested appellants to come to Guymon and take Henderson to Alabama, since they were unable to care for him any longer; that pursuant to appellees' request, appellants did come to Guymon in June 1940

and take Henderson to Alabama, and did thereafter have the sole responsibility for his care until his death on January 19, 1941. That after his removal to Alabama, and on October 25, 1940, Henderson executed a codicil to his will, specifically revoking his bequests to appellees, and in lieu thereof designated appellants his sole beneficiaries. It was alleged that by exacting the deed from Henderson, and by breaching their agreement to care for him, the Truitts obtained an "unconscionable advantage" of Henderson, and since they did not care for him as agreed, the consideration for the deed wholly failed. The prayer was for cancellation of the deed, possession of the land, and an accounting of all rents and bonuses since June 1938.

In their answer, appellees alleged that the deceased intended to and did convey the land to Lela Truitt as a gift in 1938, and since that time they have been in open, notorious and undisturbed possession of same. They denied that they entered into any agreement, verbal or otherwise, to care for Henderson during his lifetime, or that they had exercised any undue influence over the deceased in any manner; and that the deed was executed of his own free will and accord. As a special defense, they plead the three and five year statutes of limitation of Oklahoma as a bar to the prosecution of the suit.

Appellants then filed a supplemental complaint, alleging that the statute of limitations did not begin to run prior to the death of Henderson, because when appellants came to Guymon in June 1940 to take Henderson back to Alabama, the appellees promised them that if they would take care of Henderson until his death, they would have a settlement of his affairs with the heirs at that time. That in any event, the obligation to take care of Henderson during his lifetime was the actual consideration of the deed, and could have been fully met and performed by appellees any time prior to his death by tendering or offering to take care of him, and thereby preventing any rescission of the contract during Henderson's lifetime. It further recited that appellees and Henderson returned to Guymon on or about July 4, 1940, to see if a definite agreement could be reached.

concerning his property, and for all of these reasons, the statute of limitations would not begin to run until Henderson's death on January 19, 1941, and in any event not until July 1940.

In support of its decision that the cause of action here asserted did not survive the death of Henderson, the trial court relied upon Berry v. Heiser, 271 Ill. 264, 111 N.E. 99, 101. In that case, a deed was given by parents to a child in consideration of future support. There was a breach of the condition of the deed, but the grantors took no steps during their lifetime to enforce the contract or cancel the deed. After their death, however, the devisees under the will of the husband, as last survivor, sued to set aside the deed and recover the land. The court recognized the right of the grantors to avoid the deed and reclaim the property, but held that such right "Was a mere personal right or privilege, and the bare right to file a bill in equity growing out of the perpetration of a fraud on a party is not assignable."

The facts in our case and the Berry case are indistinguishably similar. But in the light of subsequent decisions, we doubt if that case is presently the law in Illinois or Oklahoma on the point of survivability. In the subsequent case of Warner v. Flack, 278 Ill. 303, 116 N.E. 197, 198, 2 A.L.R. 423, the court, speaking of the common law rule against the survivability of personal actions, stated, "the rule has no application to cases of equitable cognizance, for remedies administered in equity do not die with the person." And quoting from another Illinois case (Rickman v. Meier, 213 Ill. 507, 72 N.E. 1121, 1124), the court said, "the law is that where a deed or other conveyance has been procured by undue influence, if it be not ratified by the party making it after the undue influence has ceased to operate, it may be set aside after his death at the suit of those who succeed to his rights." The court drew a distinction between the assignment of a mere right of action for a tort, condemned by Justice Story in his Commentaries on Equity Jurisprudence, Section 1040g, and the assignment or inheritance of the whole estate to which the cause of action belongs.

It seems now to be the modern and more generally accepted rule that the equitable right of a grantor to seek the cancellation of a deed or other instrument obtained under fraud, undue influence, or failure of consideration, survives to his heirs, devisees or legal representatives. Moran v. Beson, 225 Mich. 144, 195 N.W. 688; Anderson v. Reed, 20 N.M. 202, 148 P. 502, L.R.A.1916B, 862; Fluharty v. Fluharty, 54 W.Va. 407, 46 S.E. 199; White v. Bailey, 65 W.Va. 573, 64 S.E. 1019, 23 L.R.A.,N.S. 232; Annot. 2 A.L.R. 431; 110 A.L.R. 849, 856; 112 A.L.R. 670, 720.

Oklahoma, where we must look for our law, embraces the general rule of survivability. Under similar facts, the Oklahoma court has recently held that where one conveys land to another in consideration of the latter's promise to support the former for his life, his heirs may enforce the remedy of re-entry for breach of the promise, provided it is shown that the breach existed at the time of the grantor's death. Buckles v. Smith, 195 Okl. 272, 156 P.2d 1019. See also Sims v. Russworm, 192 Okl. 330, 136 P.2d 942; Drake v. High, 69 Okl. 288, 172 P. 53. We conclude that the cause of action herein asserted did survive Henderson's death, and that the appellants, as heirs and devisees, had standing to maintain this action.

In holding that the asserted cause of action was barred by either the two or three year statute of limitation, Title 12 O.S.A. § 95(2) (3), the trial court proceeded upon the theory that the action was upon an oral contract founded in fraud; that if based upon fraud, the two year statute applied, and the cause is barred because commenced more than two years after the discovery of the fraud on October 25, 1940, when Henderson executed the codicil to his will. If the three year statute of limitation applies as an action upon an oral contract for failure of consideration, the court was of the opinion that the breach occurred some time after Henderson left the Truitt home in June, and prior to the execution of the codicil on October 25, 1940; that the statute began to run from the time Henderson could have rightfully maintained an action for its breach, which was more than three

years before the commencement of this action.

The appellants would have us treat the cause as one for the recovery of real property and apply the fifteen year statute of limitations under Section 93(4), Title 12 O.S.A., but argue that in any event, the contract sued upon is a continuing agreement to the death of the grantor, and the statute would not therefore begin to run until Henderson's death on January 19, 1941. It is said that this action is patterned upon the Oklahoma case of Campbell v. Dick, 71 Okl. 186, 176 P. 520. That case does hold that where the primary purpose of an action is the recovery of possession of land, the fifteen year statute of limitations applies, although the incidental grounds of recovery may be fraud in the conveyance. But, subsequent Oklahoma decisions have expressly repudiated Campbell v. Dick, supra, and have unequivocally established the rule that an equitable action for the re-investment of the legal title to real property is not governed by the fifteen year statute of limitations. Dillon v. Helm, 196 Okl. 140, 163 P.2d 539; Mansfield, Brunson, Kemp, & Ahrens v. King, 160 Okl. 243, 16 P.2d 87; Tomlin v. Roberts, 126 Okl. 165, 258 P. 1041; Warner v. Coleman, 107 Okl. 292, 231 P. 1053.

◼ Since this is an equitable action, the defense of laches necessarily applies, and the statute of limitations has relevancy by analogy only. A court of equity is not bound by the statute of limitations. It may grant relief, although an action at law would be barred by the statute, or it may withhold relief though the statute of limitations would not bar the action. But, in the absence of extraordinary circumstances, equity will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character. Wilhelm v. Pfinning, Okl.Sup., 129 P.2d 580; Dunavant v. Evans, Okl.Sup., 127 P.2d 190; Thompson v. Rosehill Burial Park, 177 Okl. 422, 60 P.2d 756; Shell v. Strong, 10 Cir., 151 F.2d 909.

◼ Whether the two, three or five year statute of limitations applies by analogy depends of course upon the nature of the action. Although appellants plead facts, which if true, amount to undue influence or "unconscionable advantage", they assiduously avoid any mention of the word fraud, and in their briefs deny any intention to rely upon it. This is not an action upon an oral contract under Section 95(2), Title 12 O.S.A., or for damages for its breach. It is an equitable action for cancellation of the deed and, possession of the property, based upon failure of consideration. The oral contract is merely evidence of the consideration, and its alleged breach is proof of its failure. The deed is unconditional upon its face, and apparently conveys an indefeasible title. If, however, the consideration wholly failed by a breach of the oral promise, for which the deed was given, equity treats the action for cancellation as one upon a condition subsequent. Moffatt v. Moffatt, 195 Okl. 498, 159 P.2d 531; Annot. 76 A.L.R. 742. It is thus clear that since neither the two, three nor fifteen year statute of limitations applies, the action is one for relief "not hereinbefore provided for" and the five year statute is analogous. Section 95(6), O.S.A., Title 12.

◼ Appellants attempt to toll the statute by arguing that they were lulled by appellees' alleged promise to have a settlement of Henderson's affairs upon his death, and that therefore the statute did not start to run in any event until Henderson's death, January 19, 1941. But at the time of the alleged promise, any existing cause of action was in Henderson, and appellants did not succeed thereto until his death. Meanwhile, the statute began to run against Henderson when he could have first maintained the action, and it continued to run against him throughout his lifetime, and thereafter against his heirs until the action was barred by laches. Griffin v. Hannon, 185 Okl. 433, 93 P.2d 1078.

◼ Appellants attempt also to show that no breach existed until the death of Henderson, because appellees always had the privilege of performing the contract and thus avoiding a breach at any time before Henderson's death. If this be true, the cause of action did not survive for, as we have seen, its survivability depends upon whether it existed at the time of the

grantor's death. See Buckles v. Smith, supra. We think, however, that Henderson's involuntary departure from the Truitt home clearly constituted a breach of the agreement, and that Henderson's execution of a codicil to his will was an election to rescind. Cf. Buckles v. Smith, supra. We hold that the alleged oral agreement was breached, and the asserted cause of action accrued in June 1940, when Henderson was taken from the Truitt home in Guymon. This suit was brought on June 14, 1945, and the pleadings do not show upon their face the exact date of Henderson's departure in June 1940. If the breach occurred before the 14th of June, more than five years had elapsed when this suit was commenced. We have recently said that "Under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute, but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the analogous statute, a court of equity will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove circumstances making it inequitable to apply laches to his case." Shell v. Strong, supra [151 F.2d 911]. What we said there is singularly apposite here.

 A pre-trial order, certified to us after argument, shows that Henderson left the Truitt home on June 12, 1940. The appellants now, however, deny the correctness of this date, and seek to be relieved of its effect. When the pre-trial order was entered, the date of Henderson's departure did not appear to be a crucial fact in the lawsuit, and we are not disposed to hold the appellants to this date in the circum-

stances. Pre-trial agreements are the product of professional cooperation. They are generally arrived at voluntarily in the interest of time and economy, and in order to dispense with the necessity of formal proof of matters about which there is no substantial dispute. Their utility as an implement in the administration of justice necessarily depends upon their flexibility. If they are to serve their useful purpose, they must not be used to work a hardship or an injustice on those who have freely co-operated in furtherance of juridical efficiency. A lawyer should not be bound by an admission of a fact in a pre-trial agreement which, at that time, appeared to be inconsequential, but which later became crucial and doubtful.

The case is reversed and remanded in order that the trial court may ascertain the correct date of Henderson's departure from the Truitt home, and proceed according to the views herein expressed.